## HENRY ZERBE *v.* REPUBLIC OF HAWAII.

### ORIGINAL.

SUBMITTED OCTOBER 3, 1898.    DECIDED OCTOBER 31, 1898.

JUDD, C.J., WHITING, J., AND S. M. BALLOU, ESQ., OF THE BAR, IN PLACE OF FREAR, J., ABSENT.

A general appropriation for the pay of appraisers and examiners in the custom house may be disbursed by the collector-general in his discretion according to the agreements he may make with such employees.

Where there is a definite amount agreed upon for compensation for services to be rendered by an employee of the government an action upon a *quantum meruit* for increased duties subsequently performed will not lie.

OPINION OF THE COURT BY JUDD, C.J.

Act 26 of the laws of 1895 confers original and final jurisdiction on the Supreme Court to hear and determine certain claims against the government, among them being claims founded upon "any contract express or implied, with the government."

In this case the plaintiff alleges in substance that he was employed by the government in the service of the customs from the

5th August, 1896, to the 20th October, 1897, at a salary of $150 per month, but was paid only $100 per month and claims a balance due and owing him of $726.26. Other necessary statutory allegations are made. There is also a count on a *quantum meruit* alleging that plaintiff's services were reasonably worth the sum of $150 per month, &c.

We find from the testimony that plaintiff while employed on the docks of Honolulu as an "Inspector of Customs" at the salary or wages of $100 per month, which place he had held since May 22, 1896, was asked by Mr. McStocker, then Deputy Collector-General, the Collector-General Mr. Castle being out of the country, to come up to the office and take a position in the appraiser's office, as assistant appraiser under Mr. Fishel, another assistant appraiser. The pay Mr. Fishel received was $150 a month. The plaintiff took the position receiving the same pay he had while inspector, $100 per month. Later, in August, 1896, Mr. Fishel resigned, and plaintiff continued to work there as before and his written commission as "Inspector of Customs," dated 22nd May, 1896, was altered to "Assistant Appraiser and Examiner." Its date was not changed. Under the new appointment plaintiff's duties were about the same as before, i. e., to examine and appraise such imported goods as should be sent to the custom house for inspection. The same number of men was continued to be employed as helpers in the appraising office under plaintiff after Mr. Fishel left as assisted Mr. Fishel while he and plaintiff were doing appraising service. Presumably he did the work of two men, i. e., Mr. Fishel and himself. At that time there was no statute establishing a position or office of "appraiser." The collectors of customs were required by Section 539 of the Compiled Laws "to receive the entries of all vessels and of all goods imported in them, to ascertain the amount of duties payable thereon, endorsing the amount upon the respective entries," &c. Inferentially, the collector would have to appraise the goods, in order "to ascertain the amount of duties payable thereon." The collector could not

delegate to another his final authority and duty in valuing imported goods, but the preliminary work could be done by others and it was competent for the collector-general either to accept the valuation made by them as his own, or reject them and make a new appraisement. The object of these observations is to show that there was no statutory office of "assistant appraiser and examiner." No specific pay was appropriated by the appropriation bill of 1896 for an "appraiser" or an "assistant appraiser and examiner," but the sum of $6,000 was appropriated for "pay of appraisers and examiners." The power to distribute this fund was in the discretion of the Collector-General. He could employ as many "appraisers and examiners" as he thought the service required, and give them such pay as might be agreed upon between him and them, provided the whole amount disbursed did not exceed the sum appropriated during the two years' life of the appropriation bill.

We come now to the crucial point of this case. What was the pay agreed upon by plaintiff and the Deputy Collector? Was it $100 or $150 per month? The plaintiff says that a few days after he took the position of assistant appraiser and examiner, Mr. Fishel having resigned, he said to Deputy Collector-General McStocker, "I am doing appraiser's work now, I calculate that I get appraiser's salary too." He said, "that will all be arranged when Mr. Castle gets back; I will see that you get $150 per month,—what Fishel had." Mr. McStocker says that after Mr. Castle's return, he, McStocker, told Mr. Castle of plaintiff's asking for an increase of pay. They two discussed plans in connection with the appraiser's office and Mr. Castle said, "We won't make any change," and McStocker then told plaintiff "Mr. Castle has said that he did not see his way clear to make any change in the wages." The plaintiff says that Mr. Castle's reply was never communicated to him, plaintiff. Mr. McStocker admits that plaintiff several times asked for an increase of pay, and he told him that his pay would depend upon what satisfaction he gave in the performance of his duties. The utmost that

plaintiff can say, to sustain the alleged agreement for $150 per
month, is that Mr. McStocker said "I will see that you get $150,
the same pay that Mr. Fishel had." This does not make a con-
tract for $150 a month. The minds of the contracting parties
did not meet on the $150 per month pay. The plaintiff's own
evidence, taken as a whole, tends rather to show that his under-
standing was that his pay would be increased, and not that it had
been increased. Mr. McStocker's statement is only a promise
on his part that at some future time plaintiff would get the in-
creased pay. But plaintiff admits that he received $100 a month
and receipted in writing in full for the same. Plaintiff's signa-
tures to printed receipts for $100 a month are in evidence. The
plaintiff resigned on the 20th October, 1897. On the 31st
October, pay day, he signed the following receipt: "Appropria-
tion—Pay of Appraisers and Examiners. Original. Honolulu,
October 31, 1897. We, the undersigned, hereby severally
acknowledge that we have received from the Collector-General
of Customs the sums set opposite our respective names, the same
being wages in full to date:

| Names. | Wages to | Amount. | Signatures. |
|---|---|---|---|
| H. Zerbe. | October 20, 1897. | $64.45. | H. Zerbe. |
| J. H. Hare. | October 31, 1897. | 75.00. | Jno. H. Hare. |

This sum of $64.45 was balance of wages at $100 per month
to October 20 when he resigned. But plaintiff says he protested
and claimed $150 at the time of receipting each month for $100.
No writing is offered to show this, and the assertion that oral
protests were made is denied by the disbursing officer. Plain-
tiff's counsel contends that his receipts "in full" are only *prima
facie* evidence and may be rebutted. We accept this law. How
are they rebutted in this case? The plaintiff admits in his tes-
timony that the $100 a month was in fact paid to him but that
it did not preclude him from claiming that it was only "on
account" and not "in full" and does it rebut his evidence given
in the receipt itself that his contract was for $100 per month?
How? By showing that he was promised the additional $50?

This is no proof that he contracted for $150 a month. On the contrary, it affords proof that the contract was for $100 a month. A receipt for a certain sum of money may be rebutted by proof that it was not in fact received, or that a less sum was received than was due and that the receipt was given through mistake, accident, surprise, or that it was procured by fraud, &c. The general rule is that a receipt in full is of itself a complete and perfect *prima facie* defense. Even if a contract was proven for $150 a month and the plaintiff receipted for $100 a month as his "wages in full to date," it would be conclusive upon him that his wages were $100 a month unless he could explain his receipt, for a receipt in full which remains unexplained is conclusive and operates as a discharge of the claim and it is for the party against whom it is produced to establish its real character if he wishes to avoid its effect. 19 Am. & Eng. Ency. p. 1122, and cases cited. We hold that plaintiff has not avoided the effect of his receipt.

As to the count for *quantum meruit*. It cannot prevail, for an action on a claim for what the services rendered were reasonably worth in order to be recovered upon, can only be maintained where there is no stipulated sum proved in the contract of hiring. In the present case we find there was a contract by which plaintiff was to receive a hundred dollars a month for his services and he cannot recover more because his services were worth more or because others received more for like services.

We wish to add that plaintiff believed that his pay would be increased and it might be inferred that he remained in the position as long as he did at the lesser rate of pay, in expectation that he would receive the larger sum, whereas he might elsewhere earn the larger sum. Though not creating a legal liability on the part of the defendant to pay the sum sued for, these considerations together with the fact that the plaintiff was doing responsible work which had previously been done by two men might well be favorably considered by the legislature.

Judgment for defendant.

*G. A. Davis* for plaintiff.

*Attorney-General* for defendant.