# TROPIC BUILDERS, LTD. *v.* NAVAL AMMUNITION DEPOT LUALUALEI QUARTERS, INC., SAM LEN, DBA THE LEN COMPANY & ASSOCIATES, AND ALOHA CONSTRUCTION CO., INC.

## No. 4370.

April 20, 1965.

Tsukiyama, C.J., Cassidy, Wirtz, Lewis and Mizuha, JJ.

308

OPINION OF THE COURT BY LEWIS, J.

Appellants are Sam Len and Aloha Construction Co., Inc., two of the defendants named in an action to foreclose a mechanic's lien on premises owned by the United States and leased to Naval Ammunition Depot Lualualei Quarters, Inc., hereinafter referred to as the "Delaware corporation." The lease was made for the construction of Capehart housing under Title IV of the Housing Amendments of 1955, as amended (42 U.S.C.A., § 1594, *et seq.*), and the action arose out of the construction work, plaintiff-appellee, Tropic Builders, Ltd., being a partially unpaid subcontractor. Sam Len was joined in the suit as the contractor who entered into the construction contract with the Delaware corporation and the United States. It was alleged that Aloha Construction Co., Inc., designated in the complaint as the "subcontractor," performed the contract for the Delaware corporation and entered into subcontracts with plaintiff, Tropic Builders, for the masonry and concrete work. The court rendered judgment against Sam Len and Aloha Construction Co., Inc., for the balance found due, together with an attorney's fee, and ordered that the judgment, if not paid by these parties, be enforced by foreclosure of the mechanic's lien, which the court found was established, against the leasehold and Capehart Act improvements.

The action was commenced on August 10, 1959. The United States was named as a defendant and the Assistant United States Attorney was served on August 11, 1959. However, two days later the United States moved for dis-

missal, which subsequently was granted. On August 13, 1959, service was made on "Aloha Construction Co., Inc., thru Mr. David Kim, its Secretary—1501 Kapiolani Boulevard (12:50 P.M.)," according to the return of the sheriff. The next day service was made on "Sam Len dba The Len Co. & Ass. thru Akira Misawa, its Associate[1]—1129 Rycroft Street (7:10 A.M.)," and return of service then was made.

Appellants contend that the Delaware corporation, holder of the lease of the premises, the improvement of which allegedly gave rise to the mechanic's lien sought to be foreclosed, was not served with summons. As noted, the United States of America, owner of the fee simple, was dismissed from the suit, and this dismissal is not in contest. That the lien could not be foreclosed without making the lessee, the Delaware corporation, a party likewise is undisputed.[2] The Delaware corporation was an indispensable party inasmuch as the court was powerless to enforce the decree of foreclosure if rendered in its absence. *Terrell* v. *Allison,* 21 Wall. (88 U.S.) 289; *Hopper* v. *Lincoln,* 12 Haw. 352, 353.

The question arises whether the appellants have a justiciable interest sufficient to enable them to question the service on the Delaware corporation. There are two portions of the judgment to be noted in that connection. The first is that portion which adjudged that plaintiff "has a valid and subsisting mechanic's and materialmen's lien upon that said lease dated May 9, 1958, granted by

[1] Sam Len's associate, Akira Misawa, has made no appearance and there is no contention that this was a suit against the firm, under the firm name, so as to make him a party, or that it was necessary to join him as a party. The provisions of R.L.H. 1955, §§ 230-9 and 230-10 have not been invoked. The case stands just as though Sam Len had had no associate.

[2] Under R.L.H. 1955, § 193-45, the decree for the foreclosure of the lien "shall be made and entered as nearly as may be in accordance with the practice on foreclosure of mortgages in equity."

the United States to Respondent Naval Ammunition Depot Lualualei Quarters, Inc. * * *," and that in default of payment of the amount ordered paid by the judgment "the said lease and the said buildings and improvements located on the premises demised" be sold to satisfy the amount of the lien. The second is that portion which awarded an attorney's fee for services of plaintiff's attorney in excess of the amount allowable in assumpsit, applying instead the mechanic's lien statute.[3] By the judgment below this attorney's fee was not only made a part of the lien but also was ordered paid by appellants.

As parties ordered to pay an attorney's fee on the theory the suit was under the mechanic's lien statute,[4] these defendants had sufficient interest to attack the service on the Delaware corporation, which was an indispensable party to the mechanic's lien proceeding. *Cf., Williams & Miller* v. *Jones*, 180 So. 140, 142 (La. App.).

As to Sam Len, a further point appears. As the contractor who entered into the construction contract with the Delaware corporation and the United States, he was the principal on a bond insuring the Delaware corporation against any claims being made against it as owner of the project. While appellants' counsel on the argument did not agree that Mr. Len was obligated to the Delaware corporation if the judgment herein was affirmed, said counsel also made the point that this potential obligation

---

[3] The latter, R.L.H. 1955, § 193-45, provides in pertinent part: "In *addition to costs* of the suit the judge may allow any fee or fees for legal services rendered by the attorneys for any of the parties, and apportion the same as costs for payment by and between the parties or any of them, all as to the judge seem equitable in the light of the services performed and the benefits derived therefrom by the parties respectively."

[4] Appellants contend that personal judgment could not be rendered against them for attorneys' fees under the mechanic's lien statute when they have no interest in the premises being foreclosed upon. They also contend the provisions of the mechanic's lien statute in respect of attorneys' fees are unconstitutional. We do not reach these questions.

gave appellant Len an interest in the validity of the mechanic's lien proceeding. This obviously is so. *Cf., Estate of Campbell*, 46 Haw. 475, 500-501, 382 P.2d 920, 942-43; *Grandhagen* v. *Grandhagen*, 199 Wis. 315, 225 N.W. 935. A party having an interest of this nature may question the validity of the service on an absent party, judgment against whom will affect him. *Cf., Brandow* v. *Vroman*, 29 App. Div. 597, 51 N.Y. Supp. 943; *Silberfeld* v. *General Ins. Co.*, 183 Misc. 845, 53 N.Y.S.2d 83. So, in *Stanley* v. *Akoi*, 12 Haw. 344, a surety objected to further proceedings when the principal on the bond, named as a defendant, was not served. Though his point was not sustained because R.L.H. 1955, § 230-9[5] applied, his right to raise it was not questioned.

At the inception of the trial, July 9, 1962, defense counsel raised the point that the Delaware corporation "are [sic] not a party to this action," contending: "They have never been served." It was defense counsel's position that "not only this corporation, this Delaware corporation—not a party, not served—but automatically Sam Len and Associates is out as a contractor because his rights under these circumstances and his liabilities are certainly limited to the proper parties being in." The court, however, ruled: "* * * you didn't see fit to bring this matter up on a preliminary motion; so I am not going to take action on it now." Later, at the end of the trial, the court in its "Conclusions of Law" held that "proper service of the within action was duly made on Respondent Delaware Corporation. * * *"

As will appear, we are of the opinion that the court erred in holding that the Delaware corporation had been served. The court further erred in failing to pass on the matter of service at the outset of the trial. The point had not been waived even though it was not raised by a

---

[5] Cited as § 1222 of the Civil Laws of 1897.

preliminary motion, since the Delaware corporation was an indispensable party. H.R.C.P., Rule 12(h) ; *Williams & Miller* v. *Jones, supra,* 180 So. 140, 142 (La. App.).

The sheriff's return failed to show service on the Delaware corporation. No amendment of the return was made or offered, though such amendment is permitted by H.R.C.P., Rule 4(h), as well as by prior practice as illustrated by *Pasquoin* v. *Sanders,* 20 Haw. 352. H.R.C.P., Rule 4(g), does not contain the third sentence contained in its federal counterpart, which provides that: "Failure to make proof of service does not affect the validity of the service." Whether that sentence is but a restatement of the recognized rule, as suggested by *Peeples* v. *Ramspacher,* 29 F. Supp. 632, 636 (E.D.S.C.), need not be decided. In any event, the record must support the court's jurisdiction. *Mossman* v. *Damon,* 15 Haw. 401, 403; *Klosenski* v. *Flaherty,* 116 So. 2d 767 (Fla.), Annot., 82 A.L.R.2d 668. To what extent the record of service may consist of findings and conclusions of the court, and to what extent the record may be supplemented after judgment, again need not be decided. We do decide that a mere conclusion of law that proper service was made is not enough where a return has been filed showing the service made but not showing service on the party in question, and the findings of fact do not lead to the conclusion that still further service was made. The presumption of regularity can only arise with respect to jurisdictional facts concerning which the record is silent. *Settlemier* v. *Sullivan,* 97 U.S. 444, cited and followed in *Mossman* v. *Damon, supra.*

The only findings pertinent to the question at issue were: "(3) The Respondent Naval Ammunition Depot Lualualei Quarters, Inc., hereinafter referred to as the 'Delaware Corporation,' on May 6, 1958, registered with the Treasurer of the State of Hawaii pursuant to the pro-

visions of Section 174-1, R.L.H. 1955, to do business in the State of Hawaii as a foreign corporation. (4) David Kim of 2823 N. Winam Avenue, Honolulu, Hawaii was a vice-president and assistant secretary-treasurer of said Delaware Corporation and in the declaration filed by the Delaware Corporation with the Treasurer was designated as its agent upon whom legal notice and process from the courts might be served. (5) There was also formed a Hawaii corporation the Respondent Aloha Construction Co., Inc., which had as its vice-president and secretary the same David Kim. * * * (20) * * * on * * * April 30, 1959, all the capital stock of the Respondent Delaware Corporation was transferred to the United States. * * * To this date, the said David Kim continues as the agent designated by the Delaware Corporation to receive service of process in the State of Hawaii. (21) * * * Notice [of mechanic's and materialman's lien] was served on the said David Kim and the serving officer in his return stated that he had served it on the said David Kim as agent for Respondent Delaware Corporation and Respondent Aloha. Petitioner filed its suit herein to enforce said mechanic's lien on August 10, 1959, and a certified copy of the Petition and Summons was served on the said David Kim and the serving officer in his return described the said David Kim as agent for Respondent Aloha." Also pertinent is the finding that Sam Len, the contractor who has a potential obligation on the bond given the Delaware corporation, the stock of which was transferred to the United States on April 30, 1959 when the work was accepted, organized and at one time owned the stock of the Delaware corporation.

We start with the principle that the sheriff's return is prima facie evidence of all it contains. R.L.H. 1955, § 230-30. The return may be controverted,[6] but there is nothing here to controvert the statement in the return that

---

[6] *Townsend* v. *Kupa*, 40 Haw. 279.

Aloha Construction Co. was served. Aloha Construction Co. appeared and answered. Indeed, there is no contention that this corporation was not served. It is contended, rather, that the service made "thru Mr. David Kim" was made on the Delaware corporation as well as on Aloha Construction Co., or in other words that both were served though only one was mentioned in the return. At the same time it is conceded that, on the present record, it must be assumed only one copy of the complaint and summons was delivered to Mr. Kim.[7]

Thus the conclusion of law that proper service was made rests on the fact that one copy of the complaint and summons was delivered to David Kim, shown by the Treasurer's records to be an officer of the Delaware corporation and its agent designated under R.L.H. 1955, § 174-1, for service of process, as well as an officer of Aloha Construction Co. H.R.C.P., Rule 4(d) requires that the plaintiff furnish the person making service with "such copies as are necessary" and we have no doubt that the necessary copies are one for each defendant even though they have a common agent. This is the rule in the analogous situation of substituted service upon a family member when there are two defendants sought to be served. *Chaney* v. *Reddin*, 201 Okla. 264, 205 P.2d 310, Annot., 8 A.L.R. 2d 343; 72 C.J.S., *Process*, § 46. No authority has been cited, and none has been found,[8] supporting the proposition that two corporations having a common agent may be served by leaving one copy of the complaint and summons with

---

[7] If the sheriff's return had shown service on both corporations it would be presumed, in the absence of evidence to the contrary, that a copy was delivered for each. *Cf., N.S. Sachs Dry Goods Co.* v. *Hart*, 19 Haw. 494. Here the return is such that the opposite must be presumed.

[8] We take note of *Szabo* v. *Keeshin Motor Express Co.*, 10 F.R.D. 275 (N.D. Ohio), though not cited. There service on one Donley, designated agent of a corporation in receivership, was held sufficient to effect service also on the court appointed trustees having the same designated agent. The case is not analogous.

that agent. H.R.C.P., Rule 4(d) (3), requiring delivery of a copy of the summons and of the complaint, has as its obvious purpose to enable the same to be forwarded to the corporation served. As stated in *Clough* v. *Superior Equipment Corp.*, 18 Del. Ch. 202, 207-08, 157 A. 306, 308:

"* * * The section requires that the service shall be made by delivering to the director, the president residing out of the State, a copy of the process. The constable's return fails to show that such copy was delivered. The evident purpose which a statute intends to accomplish by requiring the delivery of a copy of the process to the person served, is stated in 4 *Thompson on Corporations* (3d Ed.) § 3116, to be 'that the officer or agent may be able to transmit to his corporation accurate information as to the party suing, the court in which the action is pending, the nature of the demand, the amount claimed, the day on which the defendant is required to appear and answer; and the corporation ought not to be left to the hazard involved in the inability of the officer or agent employed in the duties of his position, accurately to remember the contents of such a writ.' "

David Kim was listed as an officer of the Delaware corporation by the papers filed on May 6, 1958, when the Delaware corporation qualified. The stock of the Delaware corporation was transferred to the United States on April 30, 1959. The Treasurer's records did not indicate this until March, 1960, after the service was made on August 13, 1959. However, we do not know whether an annual exhibit under R.L.H. 1955, § 174-11[9] became due after the change of ownership, and before the date of service. In

---

[9] The annual exhibit is required to be filed within 180 days immediately following the end of the fiscal period. The record does not show the fiscal year of the Delaware corporation. It does show that up to the date of the trial no annual exhibits had been filed. The significance of this, if any, turns on when, in relationship to the transfer to the United States, an annual exhibit should have been filed.

any event, plaintiff cannot have relied on the fact that, when the time came for service of the complaint, David Kim still was listed as an officer of the Delaware corporation. At the time the Delaware corporation qualified, its papers indicated that its business was Capehart housing and that after the construction, through transfer of shares,[10] ownership would be in the United States. The notice of completion of the improvement, in response to which plaintiff filed its notice of lien, was published in May, 1959, so plaintiff was alerted to the fact that the time had arrived for transfer of the shares. According to the testimony of Mr. Bush, who at the time of the trial was, and since 1957 had been, with the Navy Office of General Counsel, assigned to the District Public Works Office, 14th Naval District, Pearl Harbor, plaintiff's counsel had been in touch with him "on and off for the last four years concerning this particular project." From these circumstances it must be assumed that plaintiff became or should have become aware that the United States had taken over the stock before that fact was reflected on the Treasurer's records and before plaintiff's suit was commenced. There is no room for an estoppel by reason of David Kim's being still listed as an officer of the Delaware corporation. The taking over of the stock by the United States defeated any possible presumption that David Kim continued to be an officer, because in the natural course of things, the United States, upon taking over the stock, would cause new officers to be elected. *Cf.,* *Henry Waterhouse Trust Co.* v. *Rawlins,* 33 Haw. 876, 882. This in fact was what occurred, it being testified that, after April 30, 1959, "civilian employees of the Navy Department in the Bureau of Yards and Docks, Washington," represented the Delaware corporation. There is nothing in the statute providing for registration of foreign corpo-

---

10 Such transfer is provided for by the Capehart Act, 42 U.S.C.A., § 1594 (c), though the date for the transfer is not there specified.

rations which makes the list of officers filed under section 174-1 conclusive, at least so far as the rights of private persons are concerned. Insofar as the validity of service turns on David Kim's having been an officer of the Delaware corporation at the time of service, the fact that he was not such officer at the time of service is a fatal defect. *Bruun* v. *Hansen*, 281 Mich. 362, 275 N.W. 173; *Lushington* v. *Seattle Auto & Driving Club*, 60 Wash. 546, 111 Pac. 785; 9 Fletcher, *Cyclopedia of the Law of Private Corporations*, § 4423 (Perm. Ed. 1964 revision); 42 Am. Jur., *Process*, § 109; Annot., 113 A.L.R. 9, 159.

Chief reliance is upon the designation of David Kim as agent to receive service of process, made under R.L.H. 1955, § 174-1, at the time of the Delaware corporation's qualifying to do business in this State. This designation, remaining on the Treasurer's records without any new agent having been appointed, continued in effect pursuant to the statute. *Stevens* v. *Sacramento Suburban Fruit Lands Co.*, 109 Cal. App. 120, 292 Pac. 699, 709; *Gibson* v. *Manufacturers' Fire & Marine Ins. Co.*, 144 Mass. 81, 10 N.E. 729, 733; Annot., 113 A.L.R. 9, 25, 163 *et seq.;* 23 Am. Jur., *Foreign Corporations*, § 514, p. 536.

No question of conflict of interest has been raised[11] and we do not intimate that such question could have been raised in view of the designation made and standing unrevoked under the statute. We do note that since only one copy of the complaint and summons was furnished it would be natural for David Kim to suppose that it was furnished to him only as representative of Aloha Construction Co., with which so far as appears he continued to have

[11] See for example *John W. Masury & Son* v. *Lowther*, 299 Mich. 516, 300 N.W. 866, distinguished in *National Equipment Rental, Ltd.* v. *Szukhent*, 375 U.S. 311. Here, David Kim was Sam Len's man, acting for him in connection with the affairs of Aloha Construction Co., as will appear. Aloha Construction Co. had failed to pay plaintiff. It was without substantial assets. It was not to the interest of Sam Len that the mechanic's lien be foreclosed since Sam Len individually had a potential liability to the Delaware corporation if that occurred.

a real relationship as distinguished from the technical relationship he bore to the Delaware corporation at the time of service. By reason of the form of the sheriff's return there is no room for an inference that anything was said to David Kim at the time of service about his being also served as the agent of the Delaware corporation.[12] It was not shown that the complaint and summons in fact were forwarded by David Kim to the Delaware corporation.[13] Under all the circumstances and without laying down an absolute rule that a copy of the complaint and summons must be furnished for each defendant in every case, we hold that the conclusion of law that proper service was made on the Delaware corporation is not adequately supported. Indeed, there emerges but the single fact that service *could* have been made on the Delaware corporation through David Kim.[14]

---

[12] Plaintiff points to portions of the record which, it is claimed, show that David Kim was served with other papers as agent of the Delaware corporation. Only the service made of the Notice of Mechanic's and Materialman's Lien antedated the alleged service of process on which the jurisdiction of the court must rest. The record shows that about six weeks before the return of service here in question a return was filed showing service of notice of lien under R.L.H. 1955, § 193-42. The return of service of the notice showed service on both the Delaware corporation and Aloha Construction Co., in each instance through David Kim. However, the question is whether the Delaware corporation was served on the occasion in question. David Kim had no authority to waive service. *Bennett* v. *Supreme Tent of Knights of Maccabees*, 40 Wash. 431, 82 Pac. 744.

[13] This is a consideration where the undertaking of the alleged agent to act as such is in doubt. *National Equipment Rental, Ltd.* v. *Szukhent, supra*, 375 U.S. 311. Here the question is whether David Kim, named as the agent of the Delaware corporation for service of process, was in fact served in that capacity, and his understanding as to his duty has relevancy in that connection. Of course, an improper service is not validated by the actual transmission of the documents. *Davis* v. *Gahan*, 227 F. Supp. 867, 871 (S.D.N.Y.) ; *Commissioners of State Insurance Fund* v. *Singer Sewing Machine Co.*, 281 App. Div. 867, 119 N.Y.S.2d 802, 804; *Bond* v. *Golden*, 273 F.2d 265 (10th Cir.).

[14] The designated agent was not necessarily the only person through whom service could have been made on the Delaware corporation. H.R.C.P., Rule 4(d) (3). The Delaware corporation had not withdrawn from the jurisdiction, but on the contrary was in possession of the leased premises, which were in use as Capehart housing and may have been under local management. See Annot., 71 A.L.R.2d 178.

We note that the United States, through the United States Attorney, appeared in connection with the service made on the United States itself and moved for dismissal. It is argued that the United States, holder of the stock of the Delaware corporation, must have known that this corporation was a defendant in the suit, named as lessee of the premises. However, even where the United States has consented to be sued in a state court, there has been coupled therewith the requirement that a copy of the complaint and summons be sent to the Attorney General of the United States by registered or certified mail.[15] In the absence of service on the Attorney General of the United States it is questionable whether the United States had knowledge of the suit in any significant way. *Cf., Messenger* v. *United States,* 231 F.2d 328 (2d Cir.). Moreover, it is service of process, not actual knowledge of the commencement of the action, which confers jurisdiction.[16] Otherwise a defendant could never object to the sufficiency of service of process, since he must have knowledge of the suit in order to make such objection. Even the former rule that a defendant must make a special appearance in order to preserve a defect in service[17] has been abrogated by H.R.C.P., Rule 12(b) (5). 2 Moore, *Federal Practice,* § 12.12, p. 2262, note 13. The crux of the matter is not whether defendant has knowledge of the action but whether it has been put to the defendant, in the proper way, that he must appear and defend or be in default.

Plaintiff relies on federal cases[18] in which a misnomer

[15] For example, the United States has consented to be sued in an action in a state court for the foreclosure of a lien upon property on which the United States has or claims a lien, but service on the United States Attorney does not suffice. 28 U.S.C.A., § 2410, as amended.

[16] See note 13, *supra,* and Annot., 113 A.L.R. 9, 170.

[17] *Ferreira* v. *Kamo,* 18 Haw. 593.

[18] *Hartford Accident & Indemnity Co. to Use of Silva* v. *Interstate Equipment Corp.,* 74 F. Supp. 791, *rehearing denied,* 81 F. Supp. 357 (D. N.J.) ; *Williams* v. *Pennsylvania R.R.,* 91 F. Supp. 652 (D. Del.) ; *Godfrey* v. *Eastern Gas & Fuel Associates,* 71 F. Supp. 175 (D. Mass.).

has been permitted to be corrected to save a claim from the statute of limitations. These cases are not in point. Plaintiff has not at any time sought to amend the return; instead, the court at the conclusion of the trial ruled that it had jurisdiction over the Delaware corporation notwithstanding that the record up to that point did not purport to show such jurisdiction. Nor is the problem one of misnomer. Liberality in the application of the rules as to what constitutes service of process is not called for. *Cf., Bond* v. *Golden, supra,* 273 F.2d 265 (10th Cir.); *Messenger* v. *United States, supra,* 231 F.2d 328 (2d Cir.).

Since service was not made on the Delaware corporation, the court could not proceed with respect to the mechanic's lien foreclosure, and the action must be viewed as one in assumpsit, that being necessarily included[19] and not requiring jurisdiction over the absent party.[20] Upon remand, it will be for the court below to decide whether opportunity still should be given[21] to serve the Delaware corporation so that proceedings to adjudge the right to a lien and enforce the same, if any, may be had. That matter has not been argued here and requires initial consideration in the trial court. The action is not barred automatically by passage of the three months' period prescribed by R.L.H. 1955, § 193-42, since proceedings were commenced in August, 1959, within three months after May 19, 1959, the date of completion as advertised. *H. Hackfeld & Co.* v. *Hilo R.R.,* 14 Haw. 448, 456.[22] However, other con-

---

[19] R.L.H. 1955, § 193-45.

[20] *Cf., Ward* v. *Deavers,* 203 F.2d 72, 75, (D.C. Cir.); *Switzer Brothers, Inc.* v. *Chicago Cardboard Co.,* 252 F.2d 407 (7th Cir.); *Panatech Corp.* v. *Carl Zeiss, Inc.,* 110 F. Supp. 664 (S.D.N.Y.).

[21] *Cf., Keene* v. *Hale-Halsell Co.,* 118 F.2d 332, 335 (5th Cir.); *Warner* v. *First Nat'l Bank,* 236 F.2d 853, 858 (8th Cir.), *Olson* v. *Miller,* 263 F.2d 738, 740-41 (D.C. Cir.); *Davis* v. *Gahan, supra,* 227 F. Supp. 867, 872, (S.D.N.Y.); 3 Moore, *Federal Practice,* § 21.04 (2d ed.).

[22] As in the cited case, we do not decide here whether the three months' period would have been met by the mere filing of the complaint without issuance of process. See H.R.C.P., Rules 3 and 4(a).

siderations are involved under the applicable rule, H.R.C.P., Rule 41(b), as illustrated by *Rollins* v. *United States*, 286 F.2d 761 (9th Cir.), holding that a complaint filed well within the applicable two-year statute of limitations and not dismissed when brought before the court on notice of the clerk for failure to serve process for a period of two and a half years, should not have been dismissed on motion of the defendant, the United States, made after service of the alias summons which the court directed to be issued, the dismissal having been ordered more than a year later on the ground that "laches" in the service of process constituted a "jurisdictional defect," while the Court of Appeals was of the opinion that no jurisdictional defect was involved, that the case had been diligently prosecuted after issuance of the alias summons, and that issuance of the alias summons was within the discretion of the judge ordering it though he might have dismissed the action under Rule 41(b); *Messenger* v. *United States, supra,* 231 F.2d 328 (2d Cir.), distinguished in *Rollins,* holding that the case was properly dismissed where, though it was filed well within the applicable two-year statute of limitations, service on the defendant, the United States, was defective, and the Court of Appeals deemed that "[for] some six years there has been a complete lack of any prosecutory effort," and that lack of prejudice to defendant did not outweigh the lack of diligence on the part of plaintiff under the circumstances of the case; *Fugle* v. *United States,* 157 F. Supp. 81 (D. Mont.) cited with approval in *Rollins,* permitting plaintiff to complete service of process against the United States where a year had elapsed since the case was filed, service had been attempted but had been defective because only the United States District Attorney was served, and both parties had proceeded diligently in the case during the intervening year up to the time when the United States

Attorney discovered that the Attorney General had not been served; *Livingstone* v. *Hobby*, 127 F. Supp. 463 (E.D. Pa.) denying a motion to dismiss, made on the ground of more than six months' delay in service, where no actual prejudice appeared; *C. J. Wieland & Son Dairy Products Co.* v. *Wickard*, 4 F.R.D. 250, quashing defective service, but holding that dismissal of the action was not required since plaintiff had made a good faith error as to the applicable requirements for service, and the case still was in a preliminary stage, no material prejudice to the substantial rights of the defendant appearing.

We proceed to the consideration of the specifications open to review in the absence of the Delaware corporation. Among these is the contention that the court erred in entering judgment against Sam Len personally for the amount due plaintiff, Tropic Builders.

The court below found that Aloha Construction Co. entered into the subcontract with plaintiff, but allowed judgment against Sam Len as well as Aloha Construction Co., on the ground stated in the order denying motions of defendants for amendment of the findings and conclusions, to wit:

"* * * the Court finds as a matter of fact that Respondent[23] Sam Len had complete control of the performance of the government contract for which the Petitioner supplied the labor and materials alleged in its complaint and Respondent Sam Len received payment for said labor and materials from the government and otherwise controlled the operations of Respondent Aloha Construction Co., Inc., which as a $1000 corporation undertaking to perform the said government contract for $551,391.00 on which Sam Len was the

---

[23] The court below referred to the parties as "respondent" or "petitioner." We have used the nomenclature appropriate under the Hawaii Rules of Civil Procedure.

general contractor, was merely a 'straw' corporation fronting for Respondent Sam Len * * *."

Plaintiff argues that its contract[24] was signed "Aloha Construction Co., Inc. By David Kim, Contractor, for Sam N. Len." Examination of the exhibits shows that Aloha Construction Co., Inc., was the named party, designated therein as "Contractor," a prepared mimeographed form being used, and that David Kim signed for Aloha Construction Co., Inc. in place of, and purportedly under the authorization of, Sam Len. This bears out the contention that Sam Len was in control of Aloha Construction Co., but no more. Other evidence to which plaintiff points goes no further.

As to the court's finding that Sam Len received payment for the labor and materials supplied by plaintiff, this was based merely on the fact that the construction job was completed, accepted, and payment therefor made to Sam Len, the contractor. Plaintiff contends Sam Len is liable on an implied contract based upon benefits received, citing 58 Am. Jur., *Work and Labor*, §§ 3-6, pp. 512-15. However, as there stated, pp. 515-16, "the law will not imply a promise to pay the value of services rendered and accepted, where there is proof of a special agreement to pay therefor a particular amount or in a particular manner * * *." Again, at 58 Am. Jur., *Work and Labor*, § 33, p. 537, it is stated: "* * * where work and labor is performed under a contract, suit must be between the parties to the contract; and third persons, although benefited by the work, cannot be sued on an implied assumpsit to pay for that benefit, because an implied undertaking cannot arise, as against one benefited by work performed, where the work was done under a special contract with other persons." These principles apply to

---

24 Plaintiff's claim is based on two contracts, for different types of work. For convenience, we treat them as one.

claims based on quasi contracts implied in law as well as to contracts implied in fact,[25] and govern here. The work was done under an express contract with Aloha Construction Co., and there is no room for an implied contract based on benefits received.

In reality, plaintiff's claim against Sam Len is an attack upon the practice of escaping individual liability by creating a corporation with inadequate assets to become the contracting party. While no authority whatsoever is cited in support of the piercing of the corporate veil in this case, we note the annotation on *"Inadequate capitalization as factor in disregard of corporate entity,"* 63 A.L.R.2d 1051. However, we do not undertake to determine in this case to what extent the courts may and should go in considering the adequacy of a corporation's financing, other than to state that the legislative prerogative to protect the public[26] should be taken into account. We are not persuaded that plaintiff in this case relied upon the credit of the other party to its contract in such manner as to make it an injustice to preserve the corporate entity. There is no finding of such reliance. In common practice, protection is afforded by the general contractor's bond to those furnishing labor and materials,[27] and this of course is expressly provided for by the Miller Act where the contractor's bond runs to the United States,[28] and where the project is under the Capehart Housing Act the contractor's bond accomplishes the same result though under different provisions. *United States for the Use of*

25 *Cf., Chandler* v. *Washington Toll Bridge Authority,* 17 Wash. 2d 591, 137 P.2d 97; *Zerbe* v. *Republic,* 11 Haw. 566, 570.

26 See, for example, the provisions as to capitalization of corporations, R.L.H. 1955, c. 172, and the provisions regulating contractors, R.L.H. 1955, c. 166A, added by S.L. 1957, c. 305.

27 Stearns, *Law of Suretyship,* § 8.13 (5th ed.); 17 Am. Jur. 2d, *Contractor's Bonds,* § 18.

28 40 U.S.C.A., § 270a *et seq.*

*Miles Lumber Co.* v. *Harrison and Grimshaw Construction Co.,* 305 F.2d 363 (10th Cir.); *Continental Casualty Co.* v. *United States for the Use of Robertson Lumber Co.,* 305 F.2d 794 (8th Cir.); *D & L Construction Co.* v. *Triangle Elec. Supply Co.,* 332 F.2d 1009 (8th Cir.); *Continental Casualty Co.* v. *Allsop Lumber Co.,* 336 F.2d 445 (8th Cir.); *Lasley* v. *United States for the Use of Westerman,* 285 F.2d 98 (5th Cir.), explained in *Autrey* v. *Williams,* 33 L.W. 2548 (5th Cir., Feb. 24, 1965); *United States for the Use of R. W. Fine* v. *Travelers Indemnity Co.,* 215 F. Supp. 455 (W.D. Mo.) (memorandum in related cases, applied in 217 F. Supp. 913 *aff'd.,* 332 F.2d 1009, *supra,* and in 224 F. Supp. 410, 233 F. Supp. 673, and 234 F. Supp. 293); *National State Bank of Newark* v. *Terminal Const. Corp.,* 217 F. Supp. 341 (D. N.J.), *aff'd.,* on the opinion below, 328 F.2d 315; *United States to the Use of Acme Furnace Fitting Co.* v. *Ft. George G. Meade Defense Housing Corp.,* 186 F. Supp. 639 (D. Md.); *Minneapolis-Honeywell Regulator Co.* v. *Terminal Construction Corp.,* 41 N.J. 500, 197 A.2d 557; *B. C. Richter Contracting Co.* v. *Continental Casualty Co.,* 41 Cal. Rptr. 98 (D.C.A., 3d Dist. Cal.); *Allsop Lumber Co.* v. *Continental Casualty Co.,* 73 N.M. 64, 385 P.2d 625; *Ireland's Lumber Yard* v. *Progressive Contractors, Inc.,* 122 N.W.2d 554 (N.D.). While the cited cases are not uniform in their conclusions on all points, they clearly support the general conclusion that a subcontractor in plaintiff's situation might have had recourse to the contractor's bond on this Capehart project, if not to the mechanic's lien law.[29] The presumption is that plaintiff relied on all the rights given it by law, and if it was claimed that plaintiff relied only upon the credit of the

---

[29] As to plaintiff's rights under the mechanic's lien law of the State, R.L.H. 1955, c. 193, part II, we express no opinion due to the Delaware corporation, an indispensable party, not having been served.

party with whom it contracted, to the exclusion of all other rights, the burden was upon the party so claiming to show it. *H. Hackfeld & Co.* v. *Hilo R.R., supra,* 14 Haw. 448, 453. Of course, plaintiff has claimed nothing of the kind but on the contrary has pursued its rights under the mechanic's lien law after electing, for some reason that does not appear, not to sue on the contractor's bond. And we see no valid reason why the corporate veil should be pierced merely to add another string to plaintiff's bow.

Let us suppose that for some purposes Sam Len might be deemed the party with whom plaintiff contracted.[30] Nevertheless, plaintiff could contract that it would not look to Sam Len for payment in the ordinary way, but would look only to its rights under the bond given by Sam Len pursuant to the Capehart Act, or the mechanic's lien law of the State, R.L.H. 1955, c. 193, part II, if any. Giving the findings and the opinion denying defendants' motions for amendment thereof their utmost significance that, in effect, was what occurred here. Plaintiff must abide by the bargain made and has no right to rely on the credit of one for whose liability plaintiff did not contract. *Marconi's Wireless Telegraph Co.* v. *Cross,* 16 Haw. 390; *Hopper* v. *Lincoln, supra,* 12 Haw. 352. The contract is not, by this conclusion, rendered illusory. Disregard of the corporate entity is for the purpose of remedying injustice but here plaintiff sustained none. On the contrary, injustice was done by the judgment of the court below, since the judgment negated whatever provisions governed the bond as to the conditions under which Sam Len might

---

[30] In some cases where the question has arisen whether the relationship of the plaintiff to the prime contractor was sufficiently close to enable the plaintiff to sue on the prime contractor's bond, the corporate veil has been pierced in order to telescope meaningless "paper tiers of contractual relationships." *Fine* v. *Travelers Indemnity Co., supra,* 233 F. Supp. 672, 681; *Continental Casualty Co.* v. *United States for the use of Conroe Creosoting Co.,* 308 F.2d 846 (5th Cir.). We assume, without deciding, that such might have been done here had the point arisen.

be held liable, and jumped over the hurdle that plaintiff did not sue on the bond in any event.

Appellants contend that the court erred in denying their motion to reopen on the ground of a statement made by the court at the time of denial of a continuance to effect a change of counsel before trial. The statement was "that the judgment, if any, could be set aside within 30 days for good cause shown." The motion to reopen the trial was made more than six months after the judgment was entered, and more than a month after it had become final by the denial of various motions filed under H.R.C.P., Rules 52(b) and 59. The day before the motion to reopen was filed, the notice of appeal had been filed. Under the doctrine of *Kealoha* v. *Tanaka*, 42 Haw. 630, the court below had no jurisdiction over the motion to reopen. No motion was presented here for leave to file the motion to reopen. We accordingly decline to review the ruling.

Specification of Error No. 4 attacks the amount of the judgment, it being contended that it should have been reduced by the sum of $5,250 which, as found, was assigned by plaintiff to American Improvement Company as security for a loan of $5,000. The complaint showed the assignment and it was produced in evidence. It was in the form of an order on Aloha Construction Co., with which that company agreed to comply. American Improvement Company has not been paid by Aloha Construction Co. or by plaintiff.

Under R.L.H. 1955, § 187-4[31] and under H.R.C.P., Rule 17(a), plaintiff was entitled to sue in its own name for the sum assigned as well as other moneys due from Aloha Construction Co., but will hold this sum for the benefit of the assignee. According to plaintiff's brief, plaintiff is agreeable to having any check in payment of the judg-

---

[31] Construed in *Honolulu Construction & Draying Co.* v. *Terrace Developers, Limited*, 48 Haw. 68, 395 P.2d 691.

ment made payable jointly to plaintiff and the assignee. However, the record indicates an Internal Revenue lien against plaintiff. Whether, should a conflict arise, American Improvement Company's rights would be good as against such lien we of course do not purport to say.

There remains for consideration the matter of attorney's fees. The judgment provided: "That Petitioner's attorney, Howard K. Hoddick, recover from the Respondents Sam Len and Aloha Construction Co., Inc., the sum of $5,382.88 for legal services rendered in this cause for the enforcement of which Petitioner's said attorney has a valid and subsisting lien * * *." The amount allowed was 25% of the principal amount of the lien established according to the court's conclusions of law. We review the judgment as one in an assumpsit action and accordingly hold that only the attorneys' fees provided for in assumpsit actions by R.L.H. 1955, § 219-14, are allowable on the present record. These, of course, are taxable as part of the recovery by the litigant, rather than in the name of his attorney.

There was no motion for attorney's fees or hearing held thereon. Counsel on both sides filed memoranda after the trial was concluded, defendants' counsel filing first and plaintiff's counsel filing a reply memorandum. In this reply memorandum, plaintiff's counsel suggested that 25% "would constitute reasonable attorney's fees in this case." So far as the record shows that was the entire presentation in the matter. A week later the judgment was entered, including allowance of the suggested 25% attorney's fee. A motion to amend the judgment was filed, but no objection was taken therein to the amount of the attorney's fee as such, apart from the objection to entertainment of the mechanic's lien foreclosure. We need not decide whether the amount of attorneys' fees under the mechanic's lien statute was a question preserved for review, apart

from the objection to entertainment of the mechanic's lien foreclosure, which we have sustained. However, for the guidance of the court below, should the question of attorneys' fees under the mechanic's lien statute, R.L.H. 1955, § 193-45 be renewed, we note that the procedure here followed was woefully inadequate. *Estate of Thz Fo Farm,* 37 Haw. 447.

For the reasons stated, we affirm the judgment against Aloha Construction Co., Inc., except for the attorney's fee allowed. We reverse the judgment against Sam Len personally. The matter of the attorney's fee is remanded for further proceedings consistent with this opinion. Insofar as the judgment establishes and provides for foreclosure of a mechanic's lien, those portions of the judgment are set aside for lack of service on the Delaware corporation, without prejudice to the question whether, on remand of the case, opportunity should be given to serve the Delaware corporation so that proceedings to adjudge the right to a lien and enforce the same, if any, may be had.

*H. William Burgess* (*A. William Barlow* with him on the briefs) for defendants-appellants.

*Howard K. Hoddick* (*Hoddick, Rothwell and Chang* of counsel) for plaintiff-appellee.