484 P.2d 164

Peter B. MURDOCK and Anthony J. Butkovich, dba P & B Oil Company, Plaintiffs and Appellants,

v.

Richard L. BLAKE, dba Wendover Richfield; and Atlantic Richfield Company, a corporation, Defendants and Respondents.

No. 12195.

Supreme Court of Utah.

April 8, 1971.

Parker M. Nielson, LaMar Duncan, Salt Lake City, for plaintiffs and appellants.

Allen H. Tibbals, of Boyden, Tibbals & Staten, Salt Lake City, for defendants and respondents.

· CALLISTER, Chief Justice:

Plaintiffs commenced the initial phase of this case in March of 1969, when they filed an action against Richard Blake and Atlantic Richfield Company, alleging that Blake was the agent and operator of a service station in Wendover, Utah, which was owned and leased by Atlantic. Plaintiffs then alleged that on three separate occasions, Blake, in the course of his employment, purchased merchandise for which he gave checks to plaintiffs, which were returned to plaintiffs and marked "Insufficient Funds." Plaintiffs prayed for judgment against the defendants for $2,551.98 in their first cause of action, and for $2,--

652.89 in the second and third causes of action.

Service of summons was made upon Blake by serving him personally, and service upon Atlantic was made by delivering the summons and complaint to "Richard L. Blake, agent." On April 28, 1969, plaintiffs had a default judgment entered against both defendants. Plaintiffs subsequently brought a supplemental proceeding against Blake, and in May 1969, they entered into a stipulation with Blake which provided a schedule of payments. Evidently, Blake did not make the payments, and, thereafter, plaintiffs caused an undated execution to be issued on the judgment. A sheriff's sale upon the personal property located in the service station was set for the 24th of September, 1969. Atlantic learned of this proposed sale and through its credit manager notified plaintiffs' attorney that Atlantic claimed a security interest in the property. Included with the letter were copies of all the documents which indicated that Atlantic had a perfected security interest in all the tools and service station equipment and inventory, and proceeds therefrom. The security agreement had been executed November 14, 1968, to secure payment of a promissory note executed by Blake on September 16, 1968, for the sum of $8,781.19. A financing statement was filed in accordance with the Uniform Commercial Code in the office of the Secretary of State. Plaintiffs' attorney was admonished that legal action would be taken if the seizure and sale of the assets of the service station were consummated. Nevertheless, the sale was held, at which time three parties paid cash in the sum of $1,290.03; and plaintiff, Butkovich, purchased the remainder for $1,531.60, which was applied against the judgment.

Subsequently, Atlantic filed a motion to vacate the judgment and to quash the service of summons. Atlantic alleged that service of summons upon it, a foreign corporation, had not been in accordance with Rule 4(e), U.R.C.P. Atlantic pleaded that it was a Pennsylvania corporation, qualified to do business in Utah, and that at all times pertinent to this action it had on file with the Secretary of State a designated resident agent qualified to receive service of process, namely, the C. T. Corporation System at 175 South Main Street, Salt Lake City, Utah. The pleading stated that no process at any time was served upon this designated agent. Atlantic concluded that the service was defective and no jurisdiction was acquired; and, therefore, the judgment should be set aside and the parties restored to their prior status. Plaintiffs' response thereto asserted that Atlantic was aware of the action, and that plaintiffs' counsel had inquired at the office of the Secretary of State and been informed that Atlantic was not qualified to do business in the state of Utah, and, therefore, at the time of service of process, Blake was

the only agent having control of the assets of the corporation within the state.

A hearing was held, and the trial court entered an order quashing the service of summons on the ground Blake was not an agent of Atlantic within the meaning of Rule 4(e) (4), U.R.C.P.; and therefore, service upon him was insufficient to bring Atlantic within the jurisdiction of the court. The judgment against Atlantic was declared void and vacated.

Thereafter, defendant Atlantic filed a motion for restitution, wherein Atlantic alleged that its property, having a market value of $4,942.88, was sold at the sheriff's sale. Accompanying the motion was an affidavit of Atlantic's regional credit manager, itemizing the property and its value. Plaintiffs have never controverted this affidavit. Subsequently, plaintiffs properly served Atlantic and then responded to the motion for restitution by claiming that the issues raised in the complaint would determine the true ownership of the property claimed by Atlantic. The trial court entered an order requiring plaintiffs to pay into court the sum of $4,942.88, the value of the property sold, to be held by the clerk, subject to the order of the court as to the ultimate disposition thereof, based upon a determination of the right thereto as between plaintiffs and Atlantic. Defendant Atlantic filed an answer, counterclaim, and a cross-claim against Blake. Plaintiffs filed a reply to the counterclaim,

and an appeal to this court, which was dismissed as premature; the case was remanded to the trial court.

Plaintiffs took no further action to comply with the order of the court; so Atlantic filed a motion to dismiss under Rule 41(b), U.R.C.P., and for judgment on its counterclaim for the value of the property sold on execution under the void judgment. The trial court granted judgment in accordance with the motion; plaintiffs appeal therefrom.

Plaintiffs contend that the trial court erred in vacating the default judgment entered against defendant Atlantic, because Atlantic had actual knowledge of the action. Plaintiffs argue that although service was not made on Atlantic's designated process agent, as provided by law, Atlantic was aware of the impending sheriff's sale and contacted plaintiffs' attorney prior to the date upon which it was held.

Atlantic urges that strict compliance with Rule 4(e) (4), U.R.C.P., is necessary to acquire jurisdiction over the corporation and that service upon Blake was not in conformity therewith, and was, therefore, insufficient; the trial court properly quashed the service of summons and declared the judgment against Atlantic void.

■ Service of summons in conformance with the mode prescribed by statute is deemed jurisdictional, for it is service of process, not actual knowledge of the com-

mencement of the action, which confers jurisdiction. Otherwise, a defendant could never object to the sufficiency of service of process, since he must have knowledge of the suit to make such objection.[1] The proper issuance and service of summons is the means of invoking the jurisdiction of the court and of acquiring jurisdiction over the defendant; these cannot be supplanted by mere notice by letter, telephone or any other such means.[2]

Plaintiffs further assert that service upon Blake was sufficient under Rule 4(e)(4), U.R.C.P., to acquire jurisdiction over Atlantic because Blake was an agent who had the management and control over property to which Atlantic claims a right of possession.

Rule 4(e), U.R.C.P., provides:

Personal service within the state shall be as follows:

\* \* \* \* \* \*

(4) Upon any corporation, not herein otherwise provided for, \* \* \* by delivering a copy thereof to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant. If no such officer or agent can be found in the county in which the action is brought, then upon any such officer or agent, or any clerk, cashier, managing agent, chief clerk, or other agent having the management, direction or control of any property of such corporation, partnership or other unincorporated association within the state. If no such officer or agent can be found in the state, and the defendant has, or advertises or holds itself out as having, an officer or place of business in this state, or does business in this state, then upon the person doing such business or in charge of such office or place of business.

The evidence established that Atlantic had been qualified to do business in the state of Utah, that it was in good standing, and that it had a designated process agent.

■ Rule 4(e) (4), U.R.C.P., provides a system of classification whereby service is to be upon one group primarily with a right to serve others as a secondary mode. In order to justify service upon a member of an inferior class under Rule 4(e) (4), U.R.C.P., it must be shown that service upon a member of the superior classes cannot be had. If the person served was a member of the secondary class, the return

1. Sternbeck v. Buck, 148 Cal.App.2d 829, 307 P.2d 970, 972 (1957); Tropic Builders, Ltd. v. Naval Ammunition Depot, 48 Haw. 306, 402 P.2d 440, 448 (1965).

2. Utah Sand & Gravel Products Corp. v. Tolbert, 16 Utah 2d 407, 409, 410, 402 P.2d 703 (1965).

must sufficiently show the facts which warrant service on him.[3]

In the instant action, Atlantic's designated agent, C. T. Corporation, was a member of the primary class, and Blake, even under plaintiffs' theory, was a member of an inferior class. Furthermore, the return of the officer making the service neither indicated that service could not be made upon some member in the superior class, nor did it show by proper description that the person served came within an inferior class. The affidavit of plaintiffs' counsel during the proceeding to quash the service does not cure the defect; the fact that counsel may have received misinformation from the office of the Secretary of State does not dispense with compliance with Rule 4(e) (4), U.R.C.P., which is formulated in mandatory terms. The judgment against Atlantic was void for lack of proper service.

Plaintiffs further contend that the trial court improperly granted an order for restitution, and, furthermore, plaintiffs should be compelled to restore only $2,821.63, the sum for which the property was sold at the sheriff's sale. Plaintiffs also challenge the court's award of attorneys' fees.

In Levy v. Drew,[4] the court held that where a judgment has been vacated by a trial court, the defendant is entitled to restitution of all things taken from him under the judgment. After the judgment is vacated, the plaintiff stands in the position of a trustee of defendant of the property obtained under the judgment. Restitution may be sought in the same or an independent action.[5]

Atlantic was a secured party and Blake was a debtor under a security agreement, and the issues of the instant action must be determined in accordance with the Commercial Code, Title 70A, U.C.A.1953, as amended 1965.

70A–9–311, U.C.A.1953, as amended 1965, provides:

The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default.

The official comments to the code indicate that the purpose of Section 9–311 is to provide without equivocation

---

3. Reader v. District Court, 98 Utah 1, 94 P.2d 858 (1939) ; Boston Acme Mines Development Co. v. Clawson, 66 Utah 103, 123, 124, 127, 240 P. 165 (1925) ; Gibbons & Reed Co. v. Standard Accident Insurance Co., 191 F.Supp. 174, 176 (USDC D Utah, 1960).

4. 4 Cal.2d 456, 50 P.2d 435, 101 A.L.R. 1144 (1935).

5. Also see Todaro v. Gardner, 3 Utah 2d 404, 409, 285 P.2d 839 (1955) ; 46 Am. Jur.2d, Judgments, § 788, p. 949.

that in all security interests the debtor's interest in the collateral remains subject to claims of creditors who take appropriate action.[6] The security agreement creates in favor of the secured party a lien on the chattels involved which is entitled to priority over the rights of unsecured creditors, but it does not exempt the collateral from forced judicial sale. The collateral may still be sold by an execution creditor subject to the interest of the secured party.[7]

Section 70A–9–311 must be construed in light of Section 70A–9–503,[8] which provides:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action * * *.

 The most important remedy available to a secured party is the right to take possession of the collateral following a debtor's default.[9] After default the debtor has lost his right of possession and sale and retains only a contingent right in the surplus, if any, after sale. On default, a secured party is entitled to possession as against a subsequent levying creditor, for a levy cannot void the secured party's right to repossession.[10]

 In the instant action, Atlantic alleged in its pleadings that the debtor, Blake, had been in default in payment of his promissory note; that no payment of any kind had been made on the obligation since April of 1969, and that by reason of his default, Atlantic was entitled to possession of the collateral described in the security agreement. These allegations were incorporated in Atlantic's counterclaim against plaintiffs, and, since plaintiffs did not respond thereto, they are deemed admitted under Rule 8(d), U.R.C.P.

 Since Blake was in default at the time plaintiffs received the default judgment, Atlantic was entitled to possession of the collateral at that time, both by virtue of the express provisions of the security agreement and by 70A–9–503. In other words, the right to possession and sale of the collateral passed from the debtor, Blake, to the secured party, Atlantic, at the time of default, and these are the rights to which Atlantic was entitled to be restored.

6. First National Bank of Glendale v. Sheriff of Milwaukee County, 34 Wis.2d 535, 149 N.W.2d 548 (1967).

7. Altec Lansing v. Friedman Sound, Inc., (Fla.App.1967) 204 So.2d 740.

8. Harrison Music Co. v. Drake, 43 Pa. Dist. & Co.2d 637 (1967).

9. Karp Bros., Inc. v. West Ward Savings & Loan Assn. of Shamokin, Penn., (Penn. Sup.Ct.1970) 271 A.2d 493.

10. Platte Valley Bank of North Bend v. Kracl, 185 Neb. 168, 174 N.W.2d 724 (1970); William Iselin & Co. v. Burgess & Leigh, Ltd., 52 Misc.2d 821, 276 N.Y.S. 2d 659 (1967).

One who has possession or an immediate right to possession, such as a chattel mortgagee or conditional seller after default, may maintain an action for conversion against one who has exercised unauthorized acts of dominion over the property of another in exclusion or denial of his rights or inconsistent therewith.[11] The Restatement of the Law, Restitution, § 128, p. 156, provides:

> A person who has tortiously obtained, retained, used, or disposed of the chattels of another, is under a duty of restitution to the other.[12]

Ordinarily, where there has been a conversion, and the property is not returned, the measure of damages is the value of the property at the time of the conversion.[13] The affidavit, submitted by Atlantic as to the value of the property at the time of the sheriff's sale has not been controverted by plaintiffs; so Atlantic is entitled to that amount rather than the proceeds of the sale as urged by plaintiffs.[14]

The judgment of the trial court is affirmed, except for the award of attorneys' fees, which was predicated on a provision in the security agreement to which plaintiffs were not parties. Costs are awarded to defendant, Atlantic Richfield Company.

TUCKETT, HENRIOD, ELLETT, and CROCKETT, JJ., concur.

---

11. First National Bank of Bay Shore v. Stamper, 93 N.J.Super. 150, 225 A.2d 162 (1966).

12. Also see § 131, Illustration 3, p. 544.

13. Whittler v. Sharp, 43 Utah 419, 426, 135 P. 112 (1913); Clarke Floor Machine Div. of Studebaker Corp. v. Gordon (Maryland 1970), 7 U.C.C.Reptr.Serv. 363; Doenges-Glass, Inc. v. General Motors Acceptance Corp., (Colo.1970) 472 P.2d 761.

14. It should be emphasized that Atlantic was entitled to possession based on Blake's default; if Blake had not been in default, Atlantic would merely be entitled to assert its priority and right to the proceeds. § 70A-9-306.