**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000118
28-OCT-2021
07:53 AM
Dkt. 113 SO**

NOS. CAAP-18-0000118, CAAP-18-0000365, CAAP-18-0000443

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


MAUI HARBOR SHOPS, LP, Plaintiff-Appellee,
v.
OCTAGON COPORATION, dba TREASURE ISLAND
ENTERTAINMENT CENTER, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
WAILUKU DIVISION
(CIVIL NO. 17-1-001704)


SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Wadsworth and McCullen, JJ.)

These consolidated appeals arise out of a commercial lease dispute between Defendant-Appellant Octagon Corporation d/b/a Treasure Island Entertainment Center (**Octagon**) and Plaintiff-Appellee Maui Harbor Shops, LP (**MHS**).[1]

In CAAP-18-0000118, Octagon appeals from the January 30, 2018 order granting MHS's Ex Parte Motion for Default Judgment in the amount of $120,309.51 (**Default Judgment**), entered in the District Court of the Second Circuit, Wailuku Division (**District Court**).[2]

---

[1] On July 13, 2018, this court entered an order consolidating appellate court case nos. CAAP-18-0000118, CAAP-18-0000365 and CAAP-18-0000443 under appellate court case no. CAAP-18-0000118.

[2] The Honorable Blaine J. Kobayashi entered the Default Judgment.

In CAAP-18-0000365, Octagon appeals from the District Court's:

(1) March 29, 2018 "Order Denying [Octagon's] Motion for Reconsideration and Relief from Judgment Filed on January 29, 2018";

(2) December 18, 2017 Judgment for Possession;

(3) March 29, 2018 "Order Denying [Octagon's] Motion for Reconsideration and Relief from Default Judgment Filed on February 9, 2018"; and

(4) Default Judgment.[3]

In CAAP-18-0000443, Octagon appeals from the District Court's:

(1) May 1, 2018 "Order Granting [MHS's] *Ex Parte* Motion for Writ of Execution"; and

(2) May 1, 2018 Writ of Execution.[4]

On appeal, Octagon contends that the District Court erred: (1) in entering judgment by default against Octagon when the court allegedly lacked personal jurisdiction over Octagon because it was not adequately served; (2) in entering judgment by default against Octagon when the court allegedly lacked subject matter jurisdiction over the action because the parties had contractually limited the forum for any dispute to the "Second Circuit Court"; (3) in entering judgment against Octagon when there was no evidentiary basis for breach of the parties' lease due to a *force majeure* clause in the lease; (4) in entering the Default Judgment against Octagon ex parte, without a proof hearing to determine the actual amount of any damages; and (5) in entering the Default Judgment against Octagon when it exceeded the amount requested in MHS's pleading. Octagon further contends that each of the above alleged errors violated Octagon's federal and state due process rights.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues

_____

[3] Judge Kobayashi also entered the identified orders and judgments in CAAP-18-0000365.

[4] The Honorable Kelsey T. Kawano entered the identified order and writ in CAAP-18-0000443.

raised and the arguments advanced by the parties, we resolve Octagon's contentions as follows:

(1)  Octagon contends that the District Court lacked personal jurisdiction over Octagon because Octagon "was not served adequately by posting in the absence of the exercise of due diligence" or, alternatively, that the District Court erroneously denied an evidentiary hearing on the issue of MHS's due diligence.  MHS argues that the service by posting complied with the court's order authorizing the manner of service, which was issued pursuant to applicable state law.

On December 11, 2017, Octagon failed to appear before the District Court to answer the October 20, 2017 "Complaint (Assumpsit-Summary Possession/Landlord - Tenant, Damages)" (**Complaint**).  The District Court entered default against Octagon, granted a judgment for possession and writ of possession, and directed MHS to file an ex parte motion for damages.  The Judgment for Possession and Writ of Possession were entered on December 18, 2017.  On or about January 24, 2018, MHS submitted its Ex Parte Motion for Default Judgment (**Motion for Default Judgment**) to the District Court.  The Default Judgment was signed by the court on January 26, 2018, and entered on January 30, 2018.

Octagon first raised the personal jurisdiction issue in its January 29, 2018 motion for reconsideration and relief from judgment (**First Motion for Reconsideration**), which sought to set aside the Judgment for Possession and Writ of Possession pursuant to District Court Rules of Civil Procedure (**DCRCP**) Rules 4(d), 59(e) and 60(b)(4).[5/]  Octagon raised the personal jurisdiction issue again in its February 9, 2018 motion for reconsideration and relief from default judgment (**Second Motion for Reconsideration**), which sought to set aside the Default Judgment pursuant to the same DCRCP rules.

DCRCP Rule 59(e) motions for reconsideration are reviewed under the abuse of discretion standard.  Yoshimura v.

---

[5/]      We note that the First Motion for Reconsideration was not made within ten days of the Judgment for Possession and Writ of Possession, pursuant to DCRCP Rule 59(e).  We thus construe the First Motion for Reconsideration as a DCRCP Rule 60(b)(4) motion.

Kaneshiro, 149 Hawaiʻi 21, 33, 481 P.3d 28, 40 (2021) (construing Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 59(e); see Chen v. Mah, 146 Hawaiʻi 157, 172, 457 P.3d 796, 811 (2020) ("The trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard." (quoting Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008))). A trial court's denial of a motion under DCRCP Rule 60(b) is likewise reviewed under the abuse of discretion standard. Citicorp Mortg., Inc. v. Bartolome, 94 Hawaiʻi 422, 428, 16 P.3d 827, 833 (App. 2000) (construing HRCP Rule 60(b)). However, with respect to motions under DCRCP Rule 60(b)(4), alleging that a judgment is void, this court has noted:

> [T]he determination of whether a judgment is void is not a discretionary issue. It has been noted that a judgment is void only if the court that rendered it lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of law. Wright & Miller, Federal Practice and Procedure: *Civil* § 2862 (1973). . . .

Id. (quoting In re Hana Ranch Co., 3 Haw. App. 141, 146, 642 P.2d 938, 941-42 (1982)). Furthermore, when a party seeks to set aside a default judgment due to improper service of process, it raises a question of the trial court's jurisdiction, which is reviewed de novo. See Wagner v. World Botanical Gardens, Inc., 126 Hawaiʻi 190, 197, 268 P.3d 443, 450 (App. 2011) (citing Citicorp Mortg., Inc., 94 Hawaiʻi at 430, 16 P.3d at 835).

The record reflects the following regarding service of process in this case: MHS and Octagon, as landlord and tenant, respectively, entered into the Lease for Maui Harbor Shops (**Lease**), dated October 17, 2016, under which Octagon leased the premises at 300 Maʻalaea Road, #1C/CS & 1E, Wailuku, Hawaiʻi (**300 Maʻalaea Road Address**). At all relevant times, Octagon was a Nevada corporation and Dr. Jon Van Cleave (**Van Cleave**) was the owner and President of Octagon. Van Cleave was also Octagon's registered agent for service of process, with an address of 83 Kainehe Place, Kihei, HI 96753 (**83 Kainehe Place Address**).

On or about November 14, 2017, MHS submitted to the District Court an Ex Parte Motion for Service of Process by Posting and by Certified Mail (**Motion re Service**). The Motion re

Service listed three "Attempted Service Dates" — October 30, November 3, and November 8, 2017 — for service of process on Octagon, via its "registered agent . . . Van Cleave," at the 83 Kainehe Place Address.  The Motion re Service cited Hawaii Revised Statutes (**HRS**) § 666-8 (quoted infra) and was supported by a process server's declaration, dated November 9, 2017.  The process server's declaration stated in relevant part:

> I attempted service on the Attempted Service Dates at the . . . Other Address(es) listed on page 1 [*i.e.*, the 83 Kainehe Place Address], that are the only known address(es) for Defendant(s).  I have checked the telephone directory of this circuit and I have not been able to find any other address for Defendant(s).  Despite my efforts, I have not been able to locate and serve said Defendant(s).  I am informed and believe that Defendant(s) continues to reside and/or do business in the State of Hawai'i but is avoiding service of process.

On November 20, 2017, the District Court filed its order granting the Motion re Service (**Order re Service**), which stated in relevant part:

> NOW, THEREFORE, YOU ARE COMMANDED to leave certified copies of this Motion and the Complaint for Summary Possession with some agent or employee of Defendant(s), provided an agent or employee can be found upon the premises or elsewhere within the circuit, and also to affix in a conspicuous place upon the certain premises located at Premises Address listed on page 1, certified copies of this Motion and the Complaint for Summary Possession, such posting to be not less than ten (10) days before the return date, and make due return of this Order with what you have done endorsed thereon.
>
> IT IS FURTHER ORDERED that Plaintiff send to Defendant(s), by certified mail, return-receipt requested, certified copies of this Motion and the Complaint for Summary Possession and file in these proceedings a declaration of the certified mail in the appropriate form.

(Emphasis omitted.)

On November 30, 2017, MHS filed two returns of service both indicating that Octagon had been "[s]erved by [p]osting per Court Order."  The first return of service stated that the Complaint, Motion re Service, and other documents were posted at the 300 Ma'alaea Road Address on November 22, 2017, and included photographs that appeared to show the posting on the door of the premises.  The second return of service stated that the Complaint, Motion re Service, and other documents were posted at the 83 Kainehe Place Address on November 22, 2017, and included

photographs that appeared to show the posting on the door of a residential property. Additionally, a later declaration and supporting exhibits filed by counsel for MHS showed that counsel had sent, via certified mail on November 20, 2017, a copy of the "Summons and Complaint" to Van Cleave at the 83 Kainehe Place Address, which mail apparently went unclaimed for some weeks before being returned to sender on January 4, 2018.

Under Hawaiʻi law,

> it is service of process, not actual knowledge of the commencement of the action which confers jurisdiction. Otherwise a defendant could never object to the sufficiency of service of process, since he must have knowledge of the suit in order to make such objection. . . . The crux of the matter is not whether [a] defendant has knowledge of the action but whether it has been put to the defendant, in the proper way, that he must appear and defend or be in default.

Tropic Builders, Ltd. v. Naval Ammunition Depot Lualualei Quarters, Inc., 48 Haw. 306, 319, 402 P.2d 440, 448-49 (1965) (emphasis added; footnote omitted). Notice of an action "must be of such nature as reasonable to convey the required information. If with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements [of due process] are satisfied." Applications of Herrick, 82 Hawaiʻi 329, 343, 922 P.2d 942, 956 (1996) (quoting Klinger v. Kepano, 64 Haw. 4, 10, 635 P.2d 938, 942 (1981)).

DCRCP Rule 4(d)(3)[6] provides that a summons and

---

[6] DCRCP Rule 4 states, in relevant part:

> **(d) [Summons]: Personal service.** The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:
>
> . . . .
>
> (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.
>
> . . . .

continued . . .

complaint shall be served together upon a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." Under DCRCP Rule (4)(d)(8), when a defendant is a corporation, "it is also sufficient if the summons and complaint are served <u>in the manner prescribed by any statute</u>." (Emphasis added.)

One such manner of service is prescribed in HRS § 666-8 (2016), which addresses service of process in summary possession proceedings. Section 666-8 states, in relevant part:

> **Service**. The summons shall be served as provided by the rules of court.
>
> . . . .
>
> If any defendant cannot be served with process within the State, and the facts shall appear by affidavit or otherwise to the satisfaction of the court, service as to such defendant may be made according to the special order of the court, but such order shall in any case include a direction to the officer to leave a certified copy of the complaint and summons with some agent or employee of mature years of the defendant, provided the agent or employee can be found upon the premises or elsewhere within the circuit, and also to affix in a conspicuous place upon the premises (as upon the wall of any store, shop, dwelling, or other building thereon, and if there is no such building, then upon some other permanent object thereon, as a tree or fence) a certified copy of the complaint and summons. The order shall further require that a certified copy of the complaint and summons be sent to the defendant by certified or registered mail, postage prepaid, unless it is shown by affidavit or otherwise to the satisfaction of the court that the address of the defendant is unknown and cannot be ascertained.

Here, Octagon argues that "no attempt at adequate service was even made." The record shows, however, MHS's repeated efforts to serve Octagon through its registered agent for service of process, Van Cleave, pursuant to DCRCP Rule

---

. . . continued

> (8) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute.

4(d)(3).[7]  After those efforts proved unsuccessful, MHS filed the Motion re Service pursuant to HRS § 666-8.  The District Court granted the motion and ordered MHS to serve process on Octagon by posting and certified mail, as authorized by DCRCP Rule 4(d)(8) and HRS § 666-8.  MHS complied with the Order re Service.  On this record, we conclude that service on Octagon was sufficient under DCRCP Rule 4(d)(8) and HRS § 666-8.

Octagon contends that service by posting violated its rights under paragraph 29.5 of the Lease.[8]  However, by its terms, Paragraph 29.5 of the Lease did not address service of process.  Moreover, the manner of service of process was governed by Hawaiʻi law, not the Lease.  Here, as discussed above, MHS complied with the Order re Service, which was issued pursuant to applicable Hawaiʻi law.[9]

---

[7]  MHS's efforts to serve Octagon through Van Cleave were also made in accordance with the requirements of HRS § 414-64, which governs service of process upon a corporation.  See HRS § 414-64(a) ("Service of any notice or process authorized by law issued against any corporation, whether domestic or foreign, by any court . . . may be made in the manner provided by law upon any registered agent, officer, or director of the corporation who is found within the jurisdiction of the court . . . .").

[8]  Paragraph 29.5 of the Lease states:

> **Notice**.  Any notice, consent or approval required to be given under this Agreement shall be in writing and shall be deemed to have been given (i) upon hand delivery, (ii) one (1) Business Day after being deposited with Federal Express or another reliable overnight courier service for next day delivery, (iii) upon facsimile transmission with confirmation (except that if the date of such transmission is not a Business Day or if such transmission is made after 5:00 p.m. (Hawaii Standard Time) on a Business Day, then such notice shall be deemed to be given on the first (1st) Business Day following such transmission), or (iv) three (3) Business Days after being deposited in the United States mail, registered or certified mail, postage prepaid, return receipt required, addressed to Landlord [MHS] or Tenant [Octagon] at the addresses set forth in the Specific Provisions.  "Business Days" means Mondays to Fridays, other than federal and State of Hawaii holidays.  Either party hereto may change its address by giving notice of such change in the above manner to the other party.

The "Specific Provisions" of the Lease list Octagon's address as 1215 South Kihei Road, Suite O-233, Kihei, HI 96753.

[9]  We note that Octagon's opening brief at page 14 cites an unpublished memorandum opinion issued by the Hawaiʻi Supreme Court in 2005.  The citation to this 2005 decision violates Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 35(c)(1) (2008) because:  the cited case was decided

continued . . .

8

Octagon argues in the alternative that the District Court erroneously denied an evidentiary hearing as to whether MHS exercised due diligence in serving Octagon.  However, Octagon did not establish the need for such a hearing in these circumstances, where MHS complied with the Order re Service, as well as Hawaiʻi law regarding the manner of service.

On this record, we conclude that the District Court had personal jurisdiction over Octagon in the underlying action. Accordingly, the District Court did not err in denying Octagon's First Motion for Reconsideration to the extent Octagon contended that the court lacked personal jurisdiction to enter the Judgment for Possession and the Writ of Possession.  Similarly, the District Court did not err in denying Octagon's Second Motion for Reconsideration to the extent Octagon contended that the court lacked personal jurisdiction to enter the Default Judgment.

(2)  Octagon contends that the District Court lacked subject matter jurisdiction over this action because MHS had waived its right to a District Court adjudication of any Lease dispute and instead agreed to the jurisdiction of the Circuit Court of the Second Circuit.  MHS argues that the District Court had subject matter jurisdiction under both the Lease and state statute.

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard.  Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. . . .  A judgment rendered by a circuit court without subject matter jurisdiction is void."  Ocean Resort Villas Vacation Owners Ass'n v. County of Maui, 147 Hawaiʻi 544, 552, 465 P.3d 991, 999 (2020) (quoting Amantiad v. Odum, 90 Hawaiʻi 152, 159, 977 P.2d 160, 167 (1999)).

"It is well-settled that subject-matter jurisdiction cannot be conferred upon a court by agreement, stipulation, or

---

. . . continued

prior to July 1, 2008; it does not establish the law of this case; it does not have res judicata or collateral estoppel effect in this case; and this case is not a criminal action or proceeding involving "the same respondent."  HRAP Rule 35(c)(1).  The unpublished decision should not have been cited, and Octagon's counsel is therefore cautioned to comply with HRAP Rule 35(c).

consent of the parties." Cvitanovich-Dubie v. Dubie, 125 Hawaiʻi 128, 141, 254 P.3d 439, 452 (2011) (brackets omitted) (quoting Gilmartin v. Abastillas, 10 Haw. App. 283, 292, 869 P.2d 1346, 1351 (1994)). Rather, HRS § 666-6 (2016) provides that "[i]n the case of summary possession proceedings, the person entitled to the possession of the premises shall bring and prosecute the person's action in the district court of the circuit wherein the lands and premises in question are situated." The Hawaiʻi Supreme Court has also made clear that so long as no issue as to title is properly raised, jurisdiction over summary possession actions lies in the district courts. See, e.g., Kimball v. Lincoln, 72 Haw. 117, 125, 809 P.2d 1130, 1134 (1991) ("Jurisdiction over summary possession actions lies in the district court, not the circuit court. HRS § 666-6."); Deutsche Bank Nat. Trust Co. v. Peelua, 126 Hawaiʻi 32, 34 n.8, 265 P.3d 1128, 1130 n.8 (2011).

Here, the Complaint initiated a summary possession proceeding. The Complaint alleged, among other things: "[MHS] is the landlord or the agent for the landlord of the property"; "[t]he premises is located in this division of this Court"; "[a] copy of the written rental agreement for the premises . . . is attached"; and "[Octagon] has broken the rental agreement" due to unpaid rent and other fees. The Complaint sought in part "[a] Judgment giving [MHS] possession of the premises."

On this record, we conclude that the District Court had subject matter jurisdiction over this summary possession action. Accordingly, the District Court did not err in denying Octagon's First Motion for Reconsideration to the extent Octagon contended that the court lacked subject matter jurisdiction to enter the Judgment for Possession and the Writ of Possession. Similarly, the District Court did not err in denying Octagon's Second Motion for Reconsideration to the extent Octagon contended that the court lacked subject matter jurisdiction to enter the Default Judgment.

(3) Octagon contends that the District Court lacked an evidentiary basis for entering judgment, because a *force majeure*

clause in the Lease[10] constituted a defense to its enforcement for any payment default by Octagon on or after October 1, 2017. Alternatively, Octagon contends that the District Court erroneously denied an evidentiary hearing regarding this alleged defense. MHS argues that the *force majeure* clause did not apply under the circumstances, where Octagon "made its own choice to use the gambling equipment . . . [that] led to scrutiny from the local authorities and ultimate shutdown of the business."

Octagon first raised its purported *force majeure* defense in the First Motion for Reconsideration and raised the same issue again in the Second Motion for Reconsideration. The entirety of Octagon's argument in the First Motion for Reconsideration was as follows:

### 3. There Was No Default.

The Lease Agreement of the parties specifically provides that in "Force Majeure" circumstances beyond the control of the lessee as happened here, Declaration of Van Cleave, Paragraphs 4, 5, and 6, Exhibit 1, Paragraph 29.4, the obligation to pay rent is abated during the period of delay.

The Second Motion for Reconsideration repeated the same argument verbatim, under the heading: "**3. There Was No Default by Defendant Octagon.**" Both motions relied on a declaration signed by Van Cleave, which stated in relevant part that "the local police, without notice, raided my shop and seized all of my arcade and entertainment equipment, . . claiming that I was running a gambling house, even though that was not the case

---

[10] Paragraph 29.4 of the Lease stated:

**Force Majeure.** If either party shall be delayed or hindered or prevented from the performance of any act required under this Lease by reason of strikes, lockouts, labor troubles, inability to procure materials, severe weather, fire, restrictive laws or regulations, riots, insurrections, war or other reason of a like nature not at the fault of such party, then performance of such act shall be excused for the period of the delay and the period for the performance of such act shall be so extended; provided however, that this provision shall not operate to excuse [Octagon] from the payment of rent or any other payments required hereunder after 60 day grace period after the period of delay. If there is no agreement after this grace period on payments due than [sic] [MHS] has the option to terminate the lease.

11

. . . ."  Van Cleave further stated that he and his attorney had notified MHS "that due to the above described events beyond my corporation's control, Defendant Octagon was invoking the *Force Majeure* . . . condition subsequent in the Lease Agreement . . . ."

We conclude that Octagon's First and Second Motions for Reconsideration did not meet the applicable requirements for setting aside a default judgment.  Octagon was required to meet the three-prong test applicable to motions to set aside default judgments under HRCP Rule 60(b), which requires a showing that "(1) the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act."  Chen, 146 Hawaiʻi at 173, 457 P.3d at 812 (quoting BDM, Inc. v. Sageco, Inc., 57 Haw. 73, 76, 549 P.2d 1147, 1150 (1976));[11/] see M Pocket Corp. v. Shanghai Shanghai, LLC, CAAP-16-0000070, 2018 WL 6629650, *5 (Haw. App. Dec. 19, 2018) (SDO) (applying the same three-prong test to a DCRCP Rule 60(b) motion to set aside a judgment for possession). In addition, the burden was on Octagon to establish that each prong had been satisfied.  See Chen, 146 Hawaiʻi at 174, 457 P.3d at 813 (citing In re RGB, 123 Hawaiʻi 1, 17, 229 P.3d 1066, 1082 (2010)).  If Octagon failed to meet any one prong of the test, the District Court did not abuse its discretion in refusing to set aside the judgments at issue.  See Citicorp Mortg., Inc., 94 Hawaiʻi at 439, 16 P.3d at 844.

Here, Octagon made no argument below, and makes none on appeal, regarding the first and third prongs of the applicable test, *i.e.*, that MHS would not have been prejudiced had the Judgment for Possession and the Default Judgment been set aside,

_____

[11/]     In Chen, the Hawaiʻi Supreme Court held, prospectively, that motions to set aside entry of default are governed only by the "good cause" standard explicitly stated in HRCP Rule 55(c), and need not satisfy the three-prong test enunciated in BDM, 57 Haw. at 76, 549 P.2d at 1150.  See Chen, 146 Hawaiʻi at 160, 457 P.3d at 799.  Here, Octagon did not invoke Rule 55(c) in its First and Second Motions for Reconsideration.  Even if it had, the holding in Chen "applies only to decisions on motions to set aside entry of default under HRCP Rule 55(c) after the date of this opinion[,]" which was issued on January 30, 2020.  Id. at 177, 457 P.3d at 816.  The orders and judgments at issue in this case were entered well before that date.

and Octagon's default was not the result of inexcusable neglect or a wilful act.[12/]  Without such findings, Octagon was not entitled to set aside the Judgment of Possession and the Default Judgment.  See M Pocket Corp., 2018 WL 6629650, at *5 (citing Citicorp Mortg., 94 Hawaiʻi at 439, 16 P.3d at 844); see also HRAP Rule 28(b)(7) (points not argued may be deemed waived).

Even with respect to the second prong, Octagon presented no argument to the District court as to why the police "raid" described in Van Cleave's declaration qualified as a *force majeure* under Paragraph 29.4 of the Lease so as to excuse Octagon's payment obligations under the Lease.  In short, Octagon did not provide a sufficient legal basis for the District Court to conclude that Octagon had a meritorious defense to the Complaint, and it did not establish the need for an evidentiary hearing in these circumstances.

Accordingly, we conclude that the District Court did not abuse its discretion in denying the First and Second Motions for Reconsideration and in refusing to set aside the Judgment for Possession and the Default Judgment based on Octagon's alleged *force majeure* defense.

(4) Octagon contends that the District Court "lacked the ability to enter a six-figure default judgment ex parte, without a proof hearing to determine the actual amount of damages[,] if any."  Octagon also cites several cases for the proposition that due process requires notice and an opportunity to be heard, and concludes that notice and hearing were not provided here, where "Octagon was not properly served with the summons and complaint to begin with."  MHS contends that the District Court properly entered the Default Judgment even without a proof hearing because Octagon had failed to appear to defend and raise any defenses, and was already in default.

DCRCP Rule 55 provides, in relevant parts:

---

[12/]    For example, there is no apparent dispute that Van Cleave was Octagon's registered agent for service of process at the 83 Kainehe Place Address.  However, Octagon failed to provide any explanation for why repeated attempts to serve Van Cleave at that address were unsuccessful, or why posting at that address was not an effective means of service.

**DEFAULT.**

**(a) Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and the fact is made to appear by affidavit or otherwise, the clerk shall enter that party's default.

**(b) Judgment.** Judgment by default may be entered as follows:

. . . .

(2) BY THE COURT. In all other cases the party entitled to a judgment by default shall apply to the court therefor. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings as it deems necessary and proper.

(Emphases added.)

DCRCP Rule 5 provides, in relevant part:

**SERVICE AND FILINGS OF PLEADINGS AND OTHER PAPERS.**

**(a) Service: When required.** Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, brief or memorandum of law, offer of judgment, bill of costs, designation of record on appeal, and similar paper shall be served upon each of the parties, but no service need be made on parties in default for failure to appear, except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

(Emphases added.) DCRCP Rule 5(a) thus provides two exceptions to the general rule requiring service upon each of the parties: for a motion that may be heard ex parte, and upon a party in default for failure to appear.

Here, as previously discussed, Octagon was served per the Order re Service and failed to appear and answer on December 11, 2017. The District Court entered default against Octagon and directed MHS to file an ex parte motion for damages. Under DCRCP Rule 55(a), the entry of default was proper when Octagon failed to appear, plead, or otherwise defend. For the reasons set forth in Section (1), we reject Octagon's argument that it was not properly served.

14

On or about January 24, 2018, MHS submitted its Motion for Default Judgment to the District Court. The motion detailed MHS's requested judgment in the amount of $120,309.51, comprising: a principal amount (due under the Lease), attorney's fees, filing fee, service fee, and other costs. The motion was supported by a continuation sheet that: (1) provided the factual background of the case, including Octagon's alleged breach of the Lease and the addendum to the Lease; and (2) itemized the amounts that went into determining the principal amount, including, *inter alia*, rent, shared marketing expenses, taxes, utilities, and late fees, which were offset in-part by a credit to Octagon for payment already made by Octagon. As supporting exhibits, the Motion for Default Judgment included a copy of the Lease and the addendum to the Lease, an accounting ledger, and a declaration regarding attorneys' fees and costs. The Motion for Default Judgment did not assert any new or additional claims for relief against Octagon. Thus, under DCRCP Rule 5(a), the Motion for Default Judgment did not require service, because it was a motion that could be heard ex parte,[13] and was brought against a party that was in default for failure to appear, and did not assert any new or additional claims for relief against the defaulted party.

Given the record and the circumstances of this case, we conclude there was no due process violation. The District Court did not abuse its discretion in denying the Second Motion for Reconsideration to the extent Octagon contended that the Default Judgment was improperly entered without a proof hearing.

(5) Octagon contends that the District Court "lacked the ability to enter a six-figure default judgment [that]

---

[13] Under DCRCP Rule 55(b)(2), the District Court had authority to direct the filing of an ex parte motion to determine damages. Compare DCRCP Rule 55(b)(2) ("If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages . . ., the court may conduct such hearings as it deems necessary and proper.") with HRCP Rule 55(b)(2) ("If a party against whom judgment by default is sought has appeared in the action, the party . . . shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages . . ., the court may conduct such hearings as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.").

15

exceeded the amount requested in [the Complaint]." Octagon contrasts the final Default Judgment amount of $120,309.51 with the amount of "$58,171.35" specified as "[u]npaid rent" in the Complaint.

DCRCP Rule 54(c) provides, in pertinent part:

**JUDGMENTS; COSTS.**

. . . .

**(c) Demand for judgment.** A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.

See In re Genesys Data Techs., Inc., 95 Hawaiʻi 33, 38, 18 P.3d 895, 900 (2001) (construing analogous HRCP Rule 54(c)).

Here, the Complaint specified "[u]npaid rent $58,171.35" and specifically prayed for that amount in the demand for judgment. However, the Complaint also identified "[o]ther [l]egal fees, cost of collection, [and] late fees" in connection with the alleged breach of the Lease. The Complaint's demand for judgment sought, among other things:

C. Judgment against [Octagon] for $58,171.35.

In addition, the Court may award additional rent and other charges owed under the rental agreement, damages, court costs, interest, and reasonable attorney's fees.

Thus, the Complaint's demand for judgment was not limited to $58,171.35.

Consistent with this demand, MHS's later Motion for Default Judgment requested judgment in the amount of $120,309.51, supported by the detail and documentation discussed above in Section (4). All of the itemized amounts specified by MHS related, variously, to the "[l]egal fees, cost of collection, late fees" or "additional rent and other charges owed under the rental agreement, damages, court costs, interest, and reasonable attorney's fees," all prayed for in the Complaint. Thus, the final Default Judgment amount of $120,309.51 did not exceed the amount prayed for in the Complaint. See Henry v. Sneiders, 490 F.2d 315, 317 n.2 (9th Cir. 1974) (*per curiam*) (construing Federal Rules of Civil Procedure Rule 54(c) and holding that a

16

default judgment for $235,338.39 did not exceed the amount prayed for where the complaint requested "judgment . . . in the sum of $71,243.68 . . . and for [p]laintiff's other damages as are proved at the time of trial, together with interest and costs"); see also Genesys Data, 95 Hawaiʻi at 42, 18 P.3d at 904 (regarding HRCP Rule 9(g), "there is no requirement that any specific amount be alleged, and the purposes of both HRCP Rules 9(g) and 54(c) are met where the 'plaintiff states the nature of the injury . . . and sets forth the specific elements of damages for which he seeks judgment' such that the defendant can make a reasonably informed judgment as to whether to actively defend the action" (emphasis omitted) (quoting Melehes v. Wilson, 774 P.2d 573, 579–80 (Wyo. 1989))).

On this record, we conclude that the $120,309.51 judgment amount was not "different in kind from" and did not "exceed in amount that prayed for in the demand for judgment." DCRCP Rule 54(c). Accordingly, the District Court did not abuse its discretion in denying the Second Motion for Reconsideration to the extent Octagon contended that the Default Judgment exceeded the amount requested in the Complaint.

(6) Octagon further contends that "all five errors above by the State District Court . . . created a series of compounding due process violations, denying Octagon its freedom of contact, its written contractual rights, and its procedural due process rights to notice and a hearing before suffering financial forfeitures."

Initially, we note that this omnibus argument was not raised below and is thus waived on appeal. See State v. Gonzalez, 128 Hawaiʻi 314, 317, 288 P.3d 788, 791 (2012); State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003). Regardless, for the reasons previously discussed, the argument is without merit.

For the reasons discussed above, we affirm the following orders and judgments, entered in the District Court of the Second Circuit, Wailuku Division: (1) the December 18, 2017 Judgment for Possession; (2) the December 18, 2017 Writ of Possession; (3) the January 30, 2018 order granting the Ex Parte

17

Motion for Default Judgment; (4) the March 29, 2018 "Order Denying [Octagon's] Motion for Reconsideration and Relief from Judgment Filed on January 29, 2018"; (5) the March 29, 2018 "Order Denying [Octagon's] Motion for Reconsideration and Relief from Default Judgment Filed on February 9, 2018"; (6) the May 1, 2018 Order Granting [MHS's] Ex Parte Motion for Writ of Execution; and (7) the May 1, 2018 Writ of Execution.

DATED:  Honolulu, Hawaiʻi, October 28, 2021.


On the briefs:

Gary Victor Dubin and
Frederick J. Arensmeyer
(Dubin Law Offices)
for Defendant-Appellant.

Loren K. Tilley and
Magdalena Bajon
(Merchant Horovitz & Tilley)
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Sonja M.P. McCullen
Associate Judge